# Sample *against* Coulson.

To make a former verdict, and the testimony therein given, evidence in a subsequent trial of an ejectment, it must have been between the same parties or their privies, and in relation to the same title.

The return of a sheriff found in the office purporting to have been made by the officer, must be taken to have been regularly made; it cannot be disproved.

It would be a violation of the act of frauds and perjuries to permit the establishment of a trust in lands by the proof of parol declarations, made by the purchasers at or after the sale; there being no allegation of the payment of money by the *cestui que trust* or fraud, whereby a resulting trust would be established.

ERROR to the Common Pleas of *York* county.

This was an action of ejectment by William Coulson against Joseph and Cunningham Sample, for 35 acres of land.

[Sample v. Coulson.]

On the trial of the cause the plaintiff proved that John Sample, Sen. died in possession of the land, and that he had levied upon it since 1808; and then gave in evidence the proceedings of the Orphans' Court, by which it was ordered to be sold by his administrators, and in pursuance thereof a deed from them to Patrick Scott, dated 2d November 1824; and then offered in evidence the record of a former ejectment for the same land, brought to March Term 1832, by William Coulson, executor of Patrick Scott, deceased, against John Sample, Cunningham Sample and Joseph M. Sample; and to prove the testimony of Richard Porter and Thomas Kelly as given on that trial, identifying a certain draft, those witnesses being now dead, and then to give the draft in evidence. This evidence was objected to by the defendants, but the court overruled the objection, admitted the evidence and sealed an exception.

The record showed that on that trial, after the plaintiff had given all his evidence, a verdict was rendered for the defendant upon the following charge of the court:—" The court instructs the jury that, as to the land in dispute, Patrick Scott died intestate; that on his death it went to his heirs, not to his executors: consequently, your verdict will be for the defendants."

The plaintiff in conclusion of his cause offered in evidence the writ of ejectment and the sheriff's return; the defendants objected, alleging and offering to prove that the return was not in the handwriting of the sheriff; admitting that the writ was brought from the prothonotary's office into court. The court admitted the evidence, and sealed an exception at the instance of the defendants.

In the progress of the trial, the defendants gave in evidence a deed, dated the 19th October 1824, of James Johnston and John Kelly, administrators of John Sample, deceased, to Josiah Johnston, and called James Johnston, and then offered to prove by witness that the land mentioned in the last deed was sold by him and John Kelly as administrators, to Josiah Johnston, and was purchased by the latter in trust for Sarah, Catharine and Rebecca Sample, daughters of the deceased and sisters of the defendants, and that it was so declared at the time by him and since; to be followed by proof that they and the defendant with their consent have been in possession ever since the purchase. This was objected to, rejected, and exception taken by defendants.

These several exceptions were the subjects of the errors assigned.

*Fisher,* for the plaintiff in error. The record of the former ejectment should not have been admitted; the parties were not the same, nor did the plaintiff sue in the same right in which he now sues. 1 *Munf.* 403, 446; *Phil. Ev.* 321. There was no necessity for a cross-examination of the witnesses, for the plaintiff showed no title in himself.

[Sample v. Coulson.]

*Mayer*, contra, on the same point insisted that the evidence was rightly received : the criterion by which to judge is the power of the party to cross-examine the witnesses.    The plaintiff sued merely as a trustee, and calling himself executor was but description of his person ; the parties were therefore the same.    11 *Serg. & Rawle* 440 ; 2 *Watts & Serg.* 438 ; 17 *Serg. & Rawle* 409 ; 4 *Yeates* 129 ; 3 *Yeates* 289 ; 6 *Watts & Serg.* 51 ; 1 *Dal.* 120.

The court were right in rejecting the evidence to establish a trust.    2 *Watts* 323 ; 5 *Watts* 389 ; 9 *Watts* 35 ; 3 *Watts & Serg.* 319.

The opinion of the Court was delivered by

SERGEANT, J.—The principal question in this case arises on the 1st and 2d errors, embracing the 4th and 5th bills of exception. The present suit was brought by William Coulson in his own right to recover 35 acres of land which he claimed under a deed made to him in December 1840, by T. S. Williamson, whose title was derived from a sale by the executor of Patrick Scott, by order of the Orphans' Court, on the petition of Scott's heirs in March 1839. A former ejectment had been brought to November 1829, in the Common Pleas of York county, by William Coulson, as surviving executor of Patrick Scott, deceased, against John Sample, Cunningham Sample and Joseph M. Sample, on which a verdict passed for the defendants in August 1833.    On that trial the court instructed the jury that Patrick Scott died intestate as to the land in dispute, and that on his death it went to his heirs and not to his executors ; consequently their verdict must be for the defendants.    On the present trial, the plaintiff offered and the court admitted the verdict and judgment in evidence, and also the testimony given by John Evans, Esq., of the evidence of Richard Porter, since deceased, proving a draft identified by him as having been made by Richard Porter, with a survey at the instance of the administrators of John Sample ; also, that T. Kelly, since deceased, was a witness, and that on his examination the defendant's counsel admitted that the draft was the one referred to in the deed.

It would rather seem, from a consideration of the authorities and legal principles on this subject, that the evidence was not admissible.    To make a former verdict and the testimony then given evidence in a subsequent trial, it must be between the same parties or their privies, and in relation to the same title.    It was competent to the defendants in the former suit to fold their hands as to everything else, and rely upon the incapacity of the plaintiff to recover, and it was upon that ground alone the case was decided.    It would not be fair to implicate the defendants at a future day in points which they were not legally bound to regard, and concerning which, though they may have been at liberty to cross-examine, they were not under any obligation to do so, it being

[Sample v. Coulson.]

sufficient for them to say the plaintiff has no capacity to sue, and cannot recover, and on that alone we rely. If it were otherwise, a third person, a stranger to the parties who had the right, might institute a suit under a pretended title, and make other parties liable to be affected by the evidence in a subsequent suit. The plaintiff here stands in the same situation as a third person. It is of no importance, that Coulson who sues now is the same individual who formerly sued. The character in which he sued is the important consideration, and is that by which his legal obligations and rights are to be determined. He does not now claim as executor of Patrick Scott, or under such executor, or under his will, as he did in that suit, but independently of, and in opposition to it, holding the title of the heir, and alleging an intestacy of Patrick Scott. The first of these may be a bad title, and the second a good one; and the decision on the first ought to have no legitimate effect upon the claim on the second. Indeed, if it be admissible at all, as being *inter partes,* and on the title now in question, I do not perceive why it should not have the full effect of one verdict and judgment in ejectment against the plaintiff, which certainly would not be contended. In *Chapman* v. *Chapman,* (1 *Munf.* 403), George Chapman, the uncle, brought ejectment against George Chapman, the nephew. Afterwards George, the nephew, and his brother John, as heirs of their elder brother Nathaniel, revived a suit brought by Nathaniel, while living, against George the uncle, and the Court of Appeals held the record in the former suit not evidence. One of the reasons given is, that Nathaniel could not have availed himself of the verdict between his younger brother and his uncle, for he was not his heir, nor did he claim the land *under* him; so neither could he be prejudiced by it. In like manner, in the case before us, as William Coulson in the former suit did not claim as heir, the record of that suit would not be evidence for the defendants in the present suit, and therefore not for the plaintiff. So in *Mason's Devisees* v. *Peters' Administrators,* (1 *Munf.* 445), a judgment against executors only is no proof against the devisees of land; for there is no privity between an executor and the heir or devisee of land. In the case of *Hocker* v. *Jamison,* (2 *Watts & Serg.* 438), this court went upon the ground that the former trial was substantially between the same parties, the plaintiff in the former suit acting on behalf of the plaintiff in the latter; which brings it within a class of cases in which that principle has frequently been decided. We think, therefore, there was error in the admission of the evidence.

The 6th exception has been but little relied upon, and we think there is nothing in it. The writ filed in the office became thereby a record of the office, and must rightly be taken to have been signed by the sheriff, as it purported to be, nor could parol evidence be received to contradict it.

The 7th and 8th bills of exceptions were taken to the rejection

by the court of evidence offered by the defendants that the administrators of Josiah Johnston purchased in trust for the daughters of the deceased and sisters of the defendants; and it was so declared at the time by him and since, to be followed by proof that they and the defendants, with their consent, have been in possession ever since the purchase. But a trust cannot be established by the proof of parol declarations made by a purchaser at the time of his purchase or afterwards. This would be in direct violation of the provisions of the Act of Assembly to prevent frauds and perjuries, which requires interests in lands to be created or transferred by writing. It is true there are exceptions admitted on equity principles of a resulting trust arising from the payment of money by the *cestui que trust* for the purchaser — or of a parol contract of sale and possession taken and money paid by the vendee — or cases of fraud or mistake in the preparation or drafting of instruments; but a mere parol declaration by a purchaser who has taken the deed in his own name and paid his own money, cannot be admitted as competent to establish a trust in favour of third persons without subverting the provisions and frustrating the design of the statute. This evidence was therefore properly rejected.

11th bill. Nor can the intent or design of the purchaser to take the land for the use of third persons be entered into by evidence other than writing, where the case does not fall within those exceptions which equity has established, and which have been adverted to.

But for the first two errors assigned the judgment is reversed, and a *venire facias de novo* is awarded.

Judgment reversed, and a *venire facias de novo* awarded.