HENRY McCLURE, Plaintiff in Error, *v.* JACOB ENGEL-
HARDT, Defendant in Error.

### ERROR TO ST. CLAIR.

The levy of an execution upon land in a different county from that in which the judgment was rendered, will operate as a lien; and a sale under it, would perfect the title, by relation back to the levy.

If a certificate of a levy upon execution from a foreign county is not filed in the recorder's office, the levy will not take effect as a lien; and creditors or purchasers without notice, intervening between the levy and sale, may hold against the levy. But if a certificate of sale is filed, it will operate as a constructive notice from that date; and will pass to the purchaser all the interest of the judgment debtor.

In ejectment a defendant who holds under the same grantor with the plaintiff, cannot deny title in him, or set up an adverse title in himself or another.

A certificate of sale of lands is assignable, and title may pass under an assignment of it so defective as would not enable the holder to compel the officer to execute a deed, yet if he does execute one, it will be good.

THIS was an action of ejectment instituted by McClure against Engelhardt for the recovery of the north-west quarter of the south-west quarter, and south-east quarter of north-east quarter of Section 5, in T. 2 N., R. 7 W., in St. Clair county. Plea, general issue. It was tried by the court at April term, 1849. The court found for the defendant and rendered judgment against the plaintiff for costs. The plaintiff proved on the trial that the lands in question were entered at the proper land office on the 16th day of January, 1839, by William Cobb, and on the 8th of January, 1840, Cobb and wife conveyed the land by deed in fee simple to Jefferson Shores. The plaintiff then proved by a transcript from the Madison Circuit Court, that on the 7th day of October, A. D. 1841, Hiram Chandler recovered a judgment against Thomas J. Shores, impleaded, &c., for $253.10 debt and damages and costs. On the 30th December, 1841, an execution on the said judgment was issued to the sheriff of St. Clair county, and returned by him—that on the 8th of January, 1842, he had levied the same on the lands in question, and afterwards made no sale for want of bidders. On the 30th day of November, 1842, a venditioni exponas was issued to the sheriff of St. Clair, upon which he returned that he had sold the lands in question, on 4th of February, 1843, to Samuel G. Bailey, attorney for plaintiff, in due form of law for $246, and had filed a certificate of the sale in the recorder's office on 7th February, 1843. To admitting this record of judicial proceedings, defendant objected and excepted. Plaintiff then introduced the certificate of sale, filed in the recorder's office on the 7th day of February, 1843. The plaintiff then introduced a

deed from the sheriff of St. Clair to him as assignee of said certificate under said judicial sale, dated September, 24th, 1847. The plaintiff then proved by one Hopkins, the officer who made the levy aforesaid, that he knew Jefferson Shores, who resided on the lot claimed by Engelhardt—that when witness got the execution against Thomas J. Shores, he went to the house of Jefferson Shores, by whom witness was told that his (Shores) proper name was Thomas Jefferson Shores. Hopkins further testified that Shores lived on the tract claimed by Engelhardt at the time of the levy of the execution aforesaid, and was present at Belleville at the time of the sale of said land under said execution, and that Engelhardt lived there at the time of the commencement of this ejectment suit. The defendant then proved by Hay, the recorder of St. Clair, that no certificate of the levy of the execution in question had ever been filed in his office, he having made diligent search; that he could not tell whether the letter " h " on the endorsement of the certificate of sale in said case was made by him (Hay) or not. The defendant then offered in evidence the original certificate of sale, given by the sheriff of St. Clair, to Bailey, attorney, for Hiram Chandler, plaintiff in execution, and proved by the sheriff that the transfer or assignment on the back of the same was the only assignment of said certificate ever produced to him, and was the one upon which he executed the sheriff's deed to plaintiff. The plaintiff then introduced a deed from De Wolf & Chickering to Shores for said north-west quarter of south-west quarter of sec. 5, dated Oct. 20, 1843, and recorded in St.Clair the 23d of the same month; to which defendant excepted. The plaintiff then introduced a deed from Shores and wife to Engelhardt, for the last described tract, dated October 20th, 1843, and recorded on the 23d of the same month. Plaintiff then proved by a witness, that at the time of the sale of the above tract by Shores to Engelhardt, that Shores moved out of the house and Engelhardt the same or the following day moved in and took possession of the premises. Plaintiff below moved for a new trial, because the finding was contrary to law—contrary to evidence—and the court had admitted improper evidence, which motion was overruled.

The case is brought here by writ of error, and plaintiff assigns for error, that improper evidence was admitted on behalf of defendant below and in refusing to grant a new trial.

W. H. UNDERWOOD and P. FOUKE, for Plaintiff in Error.

G. KOERNER and G. TRUMBULL, for Defendant in Error.

SCATES, C. J.    At the time of the levy of this execution, Shores appears to have been in possession of the premises, and owned an equity of redemption—both of which were subject to levy and sale under it.    Acts 1841, 171, Sec. 7; Rev. Stat. 1845, p. 300, Sec. 1.    *Switzer et al.* v. *Skiles et al.*, 3 Gil. R. 532, 533 ; *Turney et al.* v. *Saunders et al.*, 4 Scam. R. 532; *Jackson ex dem. Stone* v. *Scott*, 18 John. R. 94 ; *Jackson* v. *Parker*, 9 Cow. R. 80, 84, 85.

Judgments were not liens upon lands at the common law, because lands were not liable to sale, but levies were liens, upon such property as was liable to be taken and sold.    By statute, the delivery of execution to the officer was made to operate as a lien.    We have modified the English rule, by subjecting the land to sale, creating a judgment lien on that in the same county of the judgment, and adopting the English statute in relation to liens on personalty by delivery of the execution.

Lands in foreign counties to the judgment were subject to levy and sale, although the judgment itself did not operate as a lien.    Without assuming that the delivery of the execution to the officer of a foreign county, would, by analogy, operate as a lien on the land, like the personalty, because it was liable to be taken.    We cannot question but that the *levy* would so operate from its date, and a sale in pursuance of such levy would perfect the title by relation back to the levy.    Fair purchasers were liable to be overreached by these semi-secret liens, without any official mode of notice or of obtaining it.

To remedy this evil, the legislature provided that the certificate of levy and sale, should each be filed in the recorder's office of the county where the lands lay, and so also of levies of attachments.    Rev. Stat. 1845, p. 302, Sec. 12, p. 305, Secs. 25, 26, 27 ; (see act 1841, p. 170, Sec. 4,) and in each case to take effect as a lien from such filing, as to creditors and *bona fide* purchasers, without notice.

The certificate of levy in this case was not filed, and therefore took no effect as a lien by constructive notice, and creditors and subsequent purchasers, without actual notice, might have held the land against this levy.    But no such right intervened between the levy and sale.    The certificate of sale was filed, and was constructive notice from that day.    This was before any conveyance back to the judgment debtor by his mortgagees, and is sufficient to pass to the purchaser all the interest of the judgment debtor, and with notice of the levy and judgment as well as of the sale.    We cannot construe the statute requiring the filing of the certificate of levy, as defeating the title acquired by the sale and certificate duly filed on account of a failure to make the levy a lien by recording it.

The only effect of the failure would be to subject the levy to be set aside, and a subsequent sale defeated, by an innocent intervening creditor or purchaser. But if none such intervene, the levy is not void, but is good to support the sale, and when that is duly made and certificate filed, it will take effect as an independent notice, and connection with the judgment through the unrecorded levy, as if the levy had never been required to be recorded. Such is the title set up and shown here, which appears to us sufficient to entitle the plaintiff to a verdict and judgment in this case, for anything shown in proof in this record.

It is contended that defendant claims under the same grantor, Shores, and is therefore estopped to deny title in him, or set up an adverse title in himself, or third person. So the rule is laid down, 1 Greenl. Ev. p. 306, Sec. 307; *Bancroft* v. *White*, 1 Caine Rep. 190, and note *a*; *Jackson ex dem. Masten* v. *Bush*, 10 John. R. 223; *Jackson ex dem. Bowne* v. *Hinman*, id. 292; *Ferguson* v. *Miles*, 3 Gil. R. 365; *McConnell* v. *Johnson*, 2 Scam. R. 528. But the fact seems to have been overlooked by the plaintiff, that he, and not the defendant, claimed title for defendant, and deduced it from Shores. Defendant offered to show title in the mortgagees, and there rested the question, contenting himself upon objections to plaintiff's title, and without setting up any in himself. We should, therefore, notice one or two more objections to plaintiff's title.

It is said the judgment was against one man, and the execution was levied upon the property of another. The answer is, that the evidence of identity is sufficient and satisfactory.

Again, that the sale was to Bailey, the attorney of the judgment creditor, and the certificate of purchase was assigned by the latter. The proofs and circumstances satisfy us abundantly, that the purchase was for and by the creditor, through his attorney of record. Upon these proofs the court would not feel authorized to render a judgment against Bailey as a purchaser, and compel him to pay the creditor for this land. This certificate was assignable by the statute.

The title might well pass, under such a defective assignment as would not enable the holder to compel the officer to execute a deed; yet he may do so, and it will be good. It is not a question in which the judgment debtor has any interest; having neglected to redeem, his title has passed; and, as to him, it is not material as to whom it is conveyed. *Wiley et al.* v. *Bean et al.*, 1 Gil. R. 305. See *Garrett* v. *Wiggins*, 1 Scam. R. 325; *Voorhees* v. *The Bank U. States*, 10 Pet. R. 478.

It was contended that this doctrine would enable sheriffs to convey the land to whom they pleased, in fraud of those having

right.   When such an attempt is made, and shown to the court, a proper remedy and corrective will be found and applied.   This does not present such an one.   A very simple punctuation after the word attorney, will make it read plainly as the parties understood and acted upon it; that is, that the land was struck off to S. G. Bailey, attorney, *for* plaintiff in execution.   Accordingly he passed over the certificate to his client, as purchaser, and he assigned it to the plaintiff here, to whom the sheriff conveyed.

If the defendant has any title, he should have presented it. So far as any appears in the record, we are of opinion with the plaintiff.

Judgment reversed and cause remanded for new trial.

*Judgment reversed.*

SKINNER, J., DISSENTING.   Judgment was obtained against Shores in Madison Circuit Court; on the 30th day of December, 1841, execution issued to the sheriff of St. Clair county, and was, on the 8th day of January, 1842, levied on the land in controversy as the property of Shores.   No certificate of this levy was filed in the recorder's office of St. Clair county, where the land levied upon is situated.   On the 30th day of November, 1842, a *venditioni exponas* execution issued, under which the land was sold, and the sheriff, on the 24th day of September, 1847, executed a deed to the plaintiff, as assignee of the purchaser.   On the 7th day of February, 1843, a duplicate of the certificate of purchase was filed by the sheriff in the recorder's office of St. Clair county, but the same was not recorded.

The defendant claimed title by deed from Shores, dated the 20th of October, 1843, and recorded the 23rd of the same month. The defendant, being a *bona fide* purchaser without actual notice, must take the title, unless he is affected by some lien of the judgment, execution, levy, or sale, or by constructive notice from the filing in the recorder's office, of the duplicate of the certificate of purchase ; and in my opinion no lien was created by either of them upon the land, nor would the defendant be constructively charged with notice of either execution, levy or sale.

The judgment of the Madison Circuit Court was no lien upon land in St. Clair county, and no certificate of the *levy* was filed in the recorder's office of the county where the land is situated.

The act of 26th February, 1841, entitled "An act to enable purchasers of real estate to ascertain whether the same is free from encumbrances, and to prevent secret liens of attachments and executions," and now in force, requires the sheriff to whom execution from a foreign county is directed, upon levy of the

same on land, to file a certificate of such *levy* in the recorder's office of the county where the land lies; and declares that, "until the filing of such certificate, such levy shall not take effect as to creditors or *bona fide* purchasers without notice."

This act requires the recorder to file the certificate of levy, and to record the same in a book to be kept for that purpose. The execution, levy, sale, and filing in the recorder's office, by the sheriff, of a duplicate of the certificate of purchase, created no lien on the land, nor were they, or any of them, constructive notice to the defendant, who, before the execution of the sheriff's deed, purchased of the execution debtor. As to the defendant, the levy did not take *effect,* and the subsequent proceedings under the execution, prior to his purchase, and without actual notice, did not affect his title under the execution debtor.

The act concerning judgments and executions, approved January 17, 1825, required sheriffs, on sale of lands under execution, "within ten days from such sale to file in the office of the clerk of the county a duplicate of such certificate" of purchase, and provided that "such certificate, or a certified copy thereof, should be taken and deemed evidence of the facts therein contained." The act of February 19th, 1841, amendatory of the act of 1825, and now in force in this respect, provides that "the duplicate copy of the certificate of purchase required by the act to which this is an amendment, to be filed in the office of the clerk of the county, shall in all cases hereafter be filed in the office of the recorder of the county in which the lands so sold under execution shall be situated."

This duplicate certificate of purchase the law requires to be so filed in *all* cases of sale of lands under execution. It is not filed for record, nor is it contemplated that it *should* be recorded. It constitutes no constructive notice. Its objects are to add to the security of the purchaser as evidence of his purchase, in case of loss of the original; to afford a certain means of ascertaining the purchaser; and to enable the debtor to redeem by paying the redemption money to such purchaser. See Real Estate Statutes 332, Secs. 10 and 11; ibid. 340, Sec. 4; ibid. 448, 449.

I think the intention of the act of February 26th, 1841, was, as its title indicates, "to prevent secret liens of attachments and executions," and that, where the execution comes from a foreign county and is levied on land, neither the execution, levy or sale, nor the filing of the duplicate of the certificate of purchase in the recorder's office by the sheriff, under the statute, will affect *bona fide* purchasers without notice, until the filing of the certificate of *levy* required by that act.

I thereupon dissent from the opinion of the majority of the court upon this question.