Splahn v. Gillespie.

———◇———

## SPLAHN v. GILLESPIE.

SHERIFF'S SALE.—*Evidence.—Action for Possession of Real Estate.—Title Under Sheriff's Sale.*—In an action to recover possession of real estate, where the plaintiff claims title by purchase at sheriff's sale under a decree of foreclosure, the decree of foreclosure and order of sale, the return of the sheriff thereon, and the deed of the sheriff to the plaintiff are competent evidence for the plaintiff.

SAME.—*Certificate of Sale.—May be Assigned.*—A certificate of purchase made by a sheriff on the sale of real estate on execution or decree of foreclosure may be assigned, and the deed of the sheriff may be made to the assignee.

SHERIFF.—*Return.—Record.*—An execution with a return of the sheriff thereon is by statute made a record.

SAME.—*Conclusiveness of Return.*—A return is conclusive against the officer who makes it, and is *prima facie* evidence in his favor.

SAME.—*Summons.*—A return upon a summons is conclusive between the parties to the action.

SAME.—*Execution.—Order of Sale.—Conclusiveness of Return.*—A party or privy may not aver the falsity of a return of a proper officer upon an execution or order of sale, except in a direct proceeding against such officer for a false return.

SAME.—Between third parties, the return of an officer is *prima facie* evidence only of the matters stated in the return.

SAME.—*Recital of Facts in Return.*—The return of an officer on *mesne* or final process can be evidence of the facts stated therein, only when such facts recited are official acts done in the ordinary and usual course of proceedings. Matters of opinion or excuse for failure to perform a duty can not be made evidence by stating them in the return.

Splahn *v.* Gillespie.

SAME.—*Return of Summons.*—*Conclusiveness of Same.*—Where the return of a sheriff to a summons shows that it was served by leaving a copy at the last usual place of residence of the defendant, it will be sufficient to show personal service, and it can not be impeached in a collateral proceeding.

BONA FIDE PURCHASER.—*Sale of Real Estate by Sheriff.*—If an order of sale of real estate on a decree of foreclosure was issued without authority, this fact does not affect the title of one who has, under such order, purchased the property, without notice of the improvident issuing of the order, and who has paid the purchase-money and received a deed from the sheriff beforenotice of such irregularity.

EVIDENCE.—*Action for Possession of Real Estate Bought at Sheriff's Sale.*—*Amount of Judgment.*—In an action to recover possession of real estate, where the plaintiff claims title by purchase at sheriff's sale under a decree of foreclosure, it is not competent for the defendant to show by evidence that he never owed the judgment creditor as much as the decree was rendered for, but that he only owed him a small part of the amount, and that he paid the same after the decree was rendered and before the sale.

SAME.—Nor can such defendant be permitted to prove that the mortgage foreclosed was without consideration, except a small amount, and that the judgment was rendered for more than was actually due.

From the Marion Superior Court.

*L. Barbour* and *C. P. Jacobs,* for appellant.

*J. E. McDonald, J. M. Butler, F. B. McDonald,* and *G. C. Butler,* for appellee.

BUSKIRK, C. J.—This was an action by the appellee against the appellant, to recover possession of certain real estate, and damages for the detention of the same.

The defendant aswered in two paragraphs:

1. The general denial.

The second was, in substance, as follows: That the plaintiff claims title by virtue of a deed from the sheriff of Marion county, upon a foreclosure of a mortgage given by the defendant to one Timothy Splahn; that the mortgage was drawn up by Christopher Werbe and William V. Burns, who defendant understood to be attorneys, and purported to be given to secure the payment of fourteen hundred dollars, but was, in fact, given to secure a loan of seventy dollars; that the false amount was inserted in the mortgage by the advice of the defendant's attorney, as the best means of securing to the defendant " his house and lot in case of an anticipated domestic difficulty, which fortu-

nately did not prove serious, and no occasion ever occurred to use the mortgage for any other purpose than to secure the loan of seventy dollars," and that it was not made to defraud any creditor or any other person; that the mortgage was left at the recorder's office and duly recorded; that he fully paid the amount due on such mortgage before it was foreclosed; that one William V. Burns, without any assignment of the mortgage and without the knowledge or consent of the mortgagor or mortgagee, fraudulently procured the mortgage from the recorder's office, and put it in suit, and prosecuted it to a final decree without the consent or knowledge of the mortgagee; that the defendant had no knowledge or notice of the suit; that he was, at the time of the commencement of the suit and for a long time thereafter, absent from Marion county, and if any summons was served, by leaving a copy at his residence, it was lost or destroyed, and never came to his knowledge; that the decree was rendered on the 6th day of October, 1866, and the order of sale was issued on the 7th of February, 1868, and the mortgaged property was sold on the 7th day of March, 1868, on a bid made in the name of Charles Coulon by said Burns; that Burns and Coulon knew at the time that the mortgage had been paid and the decree obtained fraudulently; that Coulon assigned the certificate to Mary Gillespie; that the defendant did not know the property was advertised for sale, or sale made, until a year after the sale was made; that he has resided upon such property at all times since the mortgage was made, and could have told any one inquiring that the mortgage had been satisfied; that Mary Gillespie did not and could not acquire any greater right than Coulon; that Coulon never paid any portion of his bid of five hundred dollars; and that the deed was made to Mary Gillespie before he knew of the sale.

The prayer was, that the claim of the plaintiff, which was a cloud upon his title, should be removed, and that such decree and sale thereon should be declared void, and for general relief.

A demurrer was overruled to the second paragraph of the

answer, and an exception taken. Reply in denial. The cause was tried before a jury, and a verdict returned for the plaintiff' for possession and damages. The court in special term overruled a motion for a new trial. Upon appeal, the court in general term affirmed the judgment in special term, and this ruling is assigned for error here.

The first error relied upon is the admission in evidence of the decree of foreclosure, the order of sale, the return of the sheriff thereon, and the deed of the sheriff to Mrs. Gillespie, the assignee of the certificate of purchase. In the motion for a new trial, the above propositions were divided into three:

1. The admission of the decree.
2. The admission of the order of sale.
3. The admission of the deed.

The first and second involve the same question and will be considered together. The third presents the question, whether the certificate of purchase issued by the sheriff to the purchaser was assignable.

There is considerable conflict in the authorities as to what proof has to be made by one who seeks to recover real estate where the title is derived through a judicial sale. Rorer on Judicial Sales, in section 641, p. 228, says:

" About what are the requisites to a valid sale on execution, as a general principle, there is some diversity of authorities. Some of the rulings are, that the party setting up an execution sale must show a valid judgment; valid writ of execution; a levy and deed; and that all else, when these are shown, is between the parties to the execution and the officer selling. Whilst in other cases it is holden that merely a valid judgment, and valid writ of execution, need be shown; and that if it does not appear whether there was a levy, and nothing appears to the contary, the presumption is that the officer did his duty; and, therefore, where levies are holden to be necessary, the presumption of law arises that the officer did his duty, and that a proper levy has been made; but if no levy or return was really made, or notice of sale given, it would not affect a *bona fide* purchaser. Such are the general rulings on the sub-

Splahn *v.* Gillespie.

ject, while yet ·another class of cases hold that when the judgment on which the execution issues is in law a lien upon the land to be sold, then no levy whatever is necessary; and that as a consequence arising therefrom, the production of a valid judgment, execution, and a sheriff's deed purporting to have been made on a sale under such execution, is all that is required."

A large number of cases are cited in support of the above propositions. In sec. 655, p. 234, it is stated upon an examination of the authorities, that it is the duty of the officer, in all cases, in executing a writ of *fieri facias*, to levy, whether the property be real or personal; that whilst it is "the duty of the officer to levy, the omission so to do, or to advertise the sale, or to make a return, will not affect a *bona fide* purchaser, if the sale be in all other respects sufficient and fair, even if it be made to appear thereafter in a collateral proceeding that such irregularities occurred; and that in case it is not made to appear either the one way or the other, then by presumption of law, the officer is presumed to have done his duty, and the court will hold that the requirements of the law in these particulars were complied with."

It is firmly settled by repeated decisions of this court, that a person claiming title through a sale upon execution is only required to show a valid judgment, execution, and sheriff's deed. *Carpenter* v. *Doe*, 2 Ind. 465; *Mercer* v. *Doe*, 6 Ind. 80; *Lewis* v. *Phillips*, 17 Ind. 108; *Evans* v. *Ashby*, 22 Ind. 15; *Comparet* v. *Hanna*, 34 Ind. 74; *White* v. *Cronkhite*, 35 Ind. 483.

The objection urged to the admission of the deed in evidence is, that the sale was made to Charles Coulon, while the deed is made to Mary Gillespie, as assignee of the certificate of purchase; and it is very earnestly contended that the certificate of purchase is not assignable, and that consequently the sheriff possessed no power to make a deed to any other person than the purchaser.

The redemption act of June 4th, 1861, 2 G. & H. 251, pro-

vides for issuing certificates of purchase. It is not expressly provided that such certificate shall be assignable, but the implication is very strong that the legislature supposed it was assignable by that or some other act. The first section provides for the redemption of lands sold by the payment of the amount therein prescribed "to the purchaser, his heirs or assigns," etc.

By the second section, it is provided that the sheriff shall make the deed to the holder of the certificate.

A certificate of purchase is, in substance and legal effect, an agreement to convey property, on certain conditions, and is embraced and made assignable by the first section of "an act concerning promissory notes, bills of exchange, bonds, or other instruments," etc. 2 G. & H. 658. An agreement in writing to convey property is made assignable by such act. The sheriff's deed may be made to the purchaser or his assigns. *Blount* v. *Davis,* 2 Dev. 19; *Small* v. *Hodgen,* 1 Litt. 16; *In re Smith,* 4 Nevada, 254; *McClure* v. *Engelhardt,* 17 Ill. 47; *Frizzle* v. *Veach,* 1 Dana, 211. Or, in case of the death of the purchaser, it may be made to his devisee or heirs at law. *Sumner* v. *Palmer,* 10 Rich. 38; *McElmurray* v. *Ardis,* 3 Strob. 212; *Swink* v. *Thompson,* 31 Mo. 336. The purchaser may assign or transfer his bid, and a deed from the sheriff to such assignee will be valid. *Mathews* v. *Clifton,* 13 Sm. & M. 330; *Ehleringer* v. *Moriarty,* 10 Iowa, 78; *Brooks* v. *Ratcliff,* 11 Ire. 321; *Carter* v. *Spencer,* 7 Ire. 14. So the purchaser may assign the sheriff's certificate of purchase where such certificate is required, and the deed may be made to the assignee thereof. See the cases cited above in 17 Ill., 10 Rich., 10 Iowa, and 4 Nevada. In *Davis* v. *Langsdale,* 41 Ind. 399, the assignability of a certificate of purchase was recognized and acted on.

The recital of such assignment in the sheriff's deed is *prima facie* evidence thereof. *Stafford* v. *Williams,* 12 Barb. 240; *In re Smith,* 4 Nevada, 254. And though the transfer or assignment of the sheriff's certificate be so defective that a deed to the assignee could not be coerced from the offi-

cer, yet, if he execute a deed in pursuance thereof to the assignee, the deed will be good. *McClure* v. *Engelhardt, supra; Bank of the United States* v. *Voorhees,* 1 McLean, 221 ; *In re Smith,* 4 Nevada, 254.

In the case last cited the court say :

" It was objected on the trial that Martin could not hold under the sheriff's deed, or derive any advantage from it, for the reason that the sheriff's return, and perhaps other evidence, showed that the sale was made to Green, and there was no legal evidence of any assignment of Green to Martin. We think no evidence of this fact was required, but the recitals of the sheriff's deed. To support a title derived from a sheriff's sale, it is necessary to show the judgment or decree, and the order of sale.

" When you have shown the judgment and an execution, or order of sale placed in the officer's hands, then the law presumes that all the recitals contained in the deed made in pursuance of the order of sale are true. The sheriff had a right on sufficient evidence of the assignment of the certificate of sale to make the deed to Martin. His recital was *prima facie* evidence of the fact, and the deed passed the title as effectually as if Martin had been the original purchaser. Nor would it make any difference whether this assignment of the certificate by Green was by writing on the certificate itself or on a separate piece of paper. Nor could the form of the assignment be material. All that was necessary to justify the sheriff in making the deed to Martin, was satisfactory and conclusive proof that Green had transferred the benefit of his purchase to Martin."

In *Ehleringer* v. *Moriarty,* 10 Iowa, 78, it was said :

" It is a familiar doctrine and practice, that the sheriff may make his deed to a different person from the bidder, when the bidder consents to it. It is a matter of bargain between him and such other. If he does not complain, it affords the defendant no ground if the purchase-money is correctly applied."

In *McClure* v. *Engelhardt,* 17 Ill. 47, it was held :

" The title might well pass, under such a defective assign-ment as would not enable the holder to compel the officer to execute a deed ; yet he may do so, and it will be good. It is not a question in which the judgment debtor has any interest; having neglected to redeem, his title has passed ; and, as to him, it is not material as to whom it is conveyed. *Wiley* v. *Bean*, 1 Gilman, 305 ; *Garrett* v. *Wiggins*, 1 Scam. 335 ; *Voor-hees* v. *The Bank of the U. S.*, 10 Pet. 478."

We think the decree of foreclosure, the order of sale and the return thereon, and the deed of the sheriff, were properly admitted in evidence.

The fourth reason for a new trial was in these words:

" The court erred in refusing to allow the defendant to give evidence of the falsity of the sheriff's return to the execution offered in evidence as to the payment of the purchase-money bid at the sheriff's sale; also, that the sheriff falsely return-ed that he had sold said premises to Charles Coulon ; also, that the sheriff falsely returned that he, said Coulon, was the highest bidder at said sheriff's sale."

It is very earnestly contended by counsel for the appellee that the evidence offered was inadmissible, upon the ground that the return of the sheriff upon the execution was, in this collateral proceeding, conclusive upon the appellant. The sheriff, in his return, states that he sold the property to Charles Coulon, that he was the highest bidder, and that he paid the price for which it was sold. Section 517 of the code, 2 G. & H. 259, makes an execution and the return thereon a record. See *Hodson* v. *Doe*, 4 Blackf. 487.

In *Hamilton* v. *Matlock*, 5 Blackf. 421, it was held that in a *scire facias* to have execution against real estate on a tran-script of a justice's judgment, the defendant could not question the truth of the constable's return of " no property " to the execution.

In *Lines* v. *The State*, 6 Blackf. 464, which was an action on a sheriff's bond, it was held that parol evidence was not admissible to contradict the sheriff's return.

In *Goodtitle* v. *Cummins*, 8 Blackf. 179, it was held that an

immaterial portion of the return of the sheriff on an execution might be contradicted by parol evidence.

In *Williams* v. *Case*, 14 Ind. 253, and *Harlan* v. *Harris*, 17 Ind. 328, it was held that an execution, with the return thereon, were records and constituted primary evidence, and could not be proved by parol without first accounting for the original.

In *Smith* v. *Noe*, 30 Ind. 117, it was held that the return of the sheriff on the summons, however false, could not be controverted or impeached by the defendant, for the purpose of avoiding an appearance to the action.

*Rowell* v. *Klein*, 44 Ind. 290, was an action of replevin. The officer returned that, after diligent search, he was unable to find the property described in the writ. The court, over the objection and exception of the plaintiff, permitted the defendant to prove that the sheriff took from him thirty-eight bushels of wheat, for the value of which the defendant had judgment. The appellant contended that the return of the sheriff was conclusive upon the parties, and could not be impeached or contradicted by parol evidence. This court said: "The position assumed seems to be sustained by the authorities. If an officer makes a false return, the remedy is against the officer. This return can not be contradicted except in such an action."

Counsel for appellant refer us to the following authorities as establishing the proposition that the return of the sheriff to the order of sale was, in this action, only *prima facie* evidence, and consequently could be contradicted by parol evidence: *Butler* v. *The State, ex rel. McFatridge*, 20 Ind. 169; *Butts* v. *Francis*, 4 Conn. 424; *Watson* v. *Watson*, 6 Conn. 334; *Weidman* v. *Weitzel*, 13 S. & R. 96.

The case of *Butler* v. *The State, ex rel. McFatridge, supra,* was an action upon the official bond of Butler, as constable, for making a false return. The case made was this:

That the relator delivered to the constable, to hold as a pledge, a note executed by one Bell payable to the relator, for six hundred and twenty-one dollars, which the constable lev-

ied on and sold for four hundred and twenty dollars, and in his return stated that the note was given up by the defendant. Upon the trial, the plaintiff was permitted to prove that so much of the return as stated that the note was given up by the defendant was false. In this court, it was insisted upon in argument, that the return was conclusive, that the note was given up by the relator to satisfy the execution. The court say : " We do not so understand the law. A return to an execution is always conclusive against the officer who makes it, but as a general rule it is, as to other cases, mere *prima facie* evidence of the facts which it recites. The case at bar is not an exception to the rule."

The two cases cited in Connecticut hold that the return of an officer is only *prima facie* evidence of the truth of the matters therein recited.

In the case of *Gyfford* v. *Woodgate*, 11 East, 297, the question was, whether the return of the sheriff upon an execution, that he had forborne to sell at the request of the plaintiff, was conclusive in favor of the sheriff in an action against him by the plaintiff, and it was held to be only *prima facie*.

We do not deem it necessary to examine the English authorities, as the rule is stated in *Watson* v. *Watson, supra,* a case relied upon by the appellant, and which sustains his view of the law. The court say :

" It is a general rule of the English common law, that the return of a sheriff on an execution, except in relation to himself when sued, is absolutely conclusive. 19 Vin. Abr. 196, 199 ; Com. Dig. tit. Retorn. G. The reason assigned for not admitting an averment against the return of the sheriff, is, that he is a sworn officer, to whom the law gives credit. 19 Vin. Abr. 196, 201.

" The rule of common law relative to the return of a sheriff on mesne process, is the same ; and it necessarily must be, as it falls within the same reason. 19 Vin. Abr. 197, 199, 201, 202 ; *Flud* v. *Penington,* Cro. Eliz. 872 ; *Slayton* v. *Chester,* 4 Mass. 478 ; *Estabrook* v. *Hapgood,* 10 Mass. 313."

The case of *Weidman* .v. *Weitzel, supra,* does not support the doctrine contended for. The return was defective in form, and was made two years after the fact, and more than a year after the action was brought. The court said it was unworthy the name of a regular legal return. The court admitted parol evidence because there was no legal return. This is shown by the ruling in *Diller* v. *Roberts,* 13 S. & R. 60, and the subsequent case of *Sample* v. *Coulson,* 9 Watts & S. 62, where it was held that the return was conclusive.

We think the following propositions of law are deducible from the authorities which we have examined in the investigation of the subject in hand, and which are hereafter cited:

1. That a return is conclusive against the officer who makes it, and is *prima facie* evidence in his favor.

2. That a return upon a summons is conclusive between the parties to the action.

3. It is a well settled principle of the English law, that the sheriff's return on an execution or order of sale is not traversable, and the court will not try on affidavits whether the return by the sheriff is false, even though a strong case is made out showing fraud and collusion, but the party must resort to his remedy by an action against the sheriff for a false return. In Connecticut, the return of a sheriff on *mesne* process is held to be only *prima facie* evidence, but even in that State he cannot falsify it by his own evidence. In most, and, probably, in all of the other states of the United States, the rule is established, that as between privies to the suit in which the return is made, and privies and the officer, except when the latter is charged in a direct proceeding against him for a false return, the sheriff's return is conclusive and cannot be impeached. A party or privy may not aver the falsity of a return made by a proper officer, without a direct proceeding against the officer, even in chancery.

4. That between third parties the return of an officer is *prima facie* evidence only of the matters stated in the return.

5. The return of an officer on *mesne* or final process can be evidence of the facts stated therein, only when the facts recited are official acts done in the ordinary and usual course

of proceedings. Matters of opinion or excuse for failure to perform a duty can not be made evidence by stating them in the return, but must be proved on the trial. *Lindley* v. *Kelley,* 42 Ind. 294, and the authorities there cited; Gwynne Sheriffs, 473 to 477; Crocker Sheriffs, secs. 45, 46, 47; Watson Sheriffs (Phila. ed. Law Lib.) 52, 53; Allen Sheriffs, 57; *Small* v. *Hodgen,* 1 Litt. 16; *Trigg* v. *Lewis's Ex'r,* 3 Litt. 129; *Bibb* v. *Monroe,* 5 Litt. 199; *Taylor* v. *Lewis,* 2 J. J. Mar. 400; *Hill* v. *Kling,* 4 Ohio, 135; *Stewart* v. *Houston,* 25 Ark. 311; *Frasier* v. *Williams,* 15 Minn. 288; *Hutchins* v. *County Comm'rs, etc.,* 16 Minn. 13; *Huntress* v. *Tiney,* 39 Me. 237; *Hotchkiss* v. *Hunt,* 56 Me. 252; *Slayton* v. *Chester,* 4 Mass. 478; *Bott* v. *Burnell,* 9 Mass. 93; *The Inhabitants, etc.,* v. *The Inhabitants, etc.,* 11 Mass. 379; *Angell* v. *Bowler,* 3 R. I. 77; *Stoors* v. *Kelsey,* 2 Paige, 418; *Gardner* v. *Buckbee,* 3 Cow. 120; *Allen* v. *Martin,* 10 Wend. 300; *Jackson* v. *Wood,* 3 Wend. 27; *Townsend* v. *Olin,* 5 Wend. 207; *Gardner* v. *Hosmer,* 6 Mass. 325; *The Col. Ins. Co.* v. *Force,* 8 How. Pr. 353; *Ehleringer* v. *Moriarty,* 10 Iowa, 78; *Lawrence* v. *Pond,* 17 Mass. 433; *Whitaker* v. *Sumner,* 7 Pick. 551; *Miles* v. *Knott,* 12 Gill & J. 442; *Bryan* v. *Brown,* 2 Murph. 343; *Hamilton* v. *Adams,* 2 Murph. 161; *Dunn* v. *Meriwether,* 1 A. K. Mar. 158; *Martin* v. *M'Cargo,* 5 Litt. 293; *Haynes* v. *Small,* 22 Me. 14; *Wilson* v. *Loring,* 7 Mass. 392; *Barrett* v. *Copeland,* 18 Vt. 67; *Paxton* v. *Steckel,* 2 Barr Pa. 93; *Doty* v. *Turner,* 8 Johns. 20; *Sheldon* v. *Payne,* 3 Seld. 453; *In re Smith,* 4 Nevada, 254; *Kingsbury* v. *Buchanan,* 11 Iowa, 387; *Harper* v. *Moffit,* 11 Iowa, 527; *McClure* v. *Engelhardt,* 17 Ill. 47; *Wheaton* v. *Sexton,* 4 Wheat. 503.

In *Small* v. *Hodgen,* 1 Litt. 16, it was held, that the return of the sheriff is conclusive as to the fact who was the purchaser; and evidence tending to show that another was, or the person there stated to be the purchaser was not, is inadmissible even on a motion to set aside the sale.

In *Hill* v. *Kling,* 4 Ohio, 135, the court say: "The authorities show that as between parties and privies and the officer, except where the latter is charged upon its falsity, the return

is matter of record, and therefore conclusive. The return is at the peril of the officer. If true, it is his protection; if false, he alone is responsible. If a return upon execution can be impeached, or falsified by the parties to the judgment, purchasers at sheriff's sales, whether of personal or real estate, would be without protection. It would be hard indeed, if it was at the peril of the purchaser whether the return of the officer was true or false, especially where he must be absolutely ignorant of the fact."

This court correctly held, in *Butler* v. *The State, etc., supra*, that an officer's return on an execution was conclusive against him, but the statement made as the general rule in other cases is loose and inaccurate, and should no longer be regarded as authority. The conclusiveness of a return upon execution is essential to the protection of *bona fide* purchasers, and while it may, in some instances, produce hardship, its general observance will result in good.

It appears by the pleadings and the evidence that the parties to the original mortgage undertook to practice a fraud, and, if their attempted fraud has recoiled upon their own heads, they should not attempt to throw the loss upon one who is confessedly a *bona fide* purchaser. The appellant has made no attempt to relieve himself of what he now claims was an unjust judgment.

We think the court committed no error in excluding the evidence offered.

The fifth reason for a new-trial was as follows: "The court erred in refusing to allow the evidence of Michael Splahn to go to the jury, that at the time of the commencement of the suit of Timothy Splahn against Michael Splahn and wife, in the Common Pleas of Marion County, which was introduced in evidence by the plaintiff, and at the time of the alleged service of the summons in that case, and at the time of the rendition of the judgment in that case, he was absent from the county of Marion, and that he had no actual notice or personal knowledge of the commencement of the suit or the pendency thereof, or the rendition of the judgment, until

more than one year after the time of the sale of said mortgaged premises."

The return of the sheriff to the summons in the original action shows that it was served, by reading, on the wife of Michael Splahn, and as to him it was served by leaving a copy at his last usual place of residence. The return was sufficient, and showed personal service on the appellant. *Pigg* v. *Pigg*, 43 Ind. 117.

The return, however false, could not have been controverted or impeached in that action, for the purpose of avoiding an appearance to such action. *Smith* v. *Noe*, 30 Ind. 117. Surely no one would seriously contend that the return could be impeached in this collateral proceeding.

The sixth reason for a new trial was: "That the court erred in refusing to allow the defendant to prove by Timothy Splahn, the plaintiff in the case of Timothy Splahn against Michael Splahn and wife, commenced and prosecuted in the Common Pleas Court of Marion county, that he never directed an execution to issue in the case of Timothy Splahn against Michael Splahn, and did not know that the execution had been issued at the time, and until after the sale."

The offer was to prove that Timothy Splahn did not order an execution, and did not know that one had been issued until after the sale. It appears of record, that Timothy Splahn had an attorney of record, who had the power to order an execution. It was not proposed to be proved that the issuing of such order of sale was not procured and directed by such attorney. But if the order of sale was issued without authority, it would not affect the title of one who purchased the property without notice of the improvident issuing of the order, and who paid the purchase-money and received a deed before notice of such irregularity. *Lewis* v. *Phillips*, 17 Ind. 108; *Nunemacher* v. *Ingle*, 20 Ind. 135; *Sowles* v. *Harvey*, 20 Ind. 217; *The State* v. *Wilkins' Adm'r*, 21 Ind. 216; *Watt* v. *Alvord*, 25 Ind. 533; *Rhodes* v. *Green*, 36 Ind. 7; *Routh* v. *Spencer*, 38 Ind. 393.

The seventh reason was in these words: " The court erred

in refusing to allow the defendant to give evidence to the jury that the mortgage upon which the decree was rendered, in the case of Timothy Splahn against Michal Splahn and wife, was given to secure the sum of seventy dollars and no more, and that the whole amount actually due upon the mortgage, principal and interest, was paid by Michael Splahn to Timothy Splahn before the execution upon the decree of foreclosure was issued to the sheriff."

The offer as made upon the trial was somewhat different from the manner in which it is stated in the motion. The matter is thus stated in the bill of exceptions : " Thereupon the defendant, to sustain the issue on his part, offered the following evidence, to wit :

" Timothy Splahn sworn and examined. I was plaintiff in the old suit of *Splahn* v. *Splahn,* in the common pleas court ; I am a cousin to the defendant, Mike Splahn ; I don't know when the judgment in the old suit was rendered ; I think it was in 1866 ; the mortgage sued on in that case was a voluntary one—was a sham ; it was made to secure only a few dollars ; no money was passed between us.

" Question by defendant. 1. How much, if anything, was owing to you by Michael Splahn on the decree and judgment at the time the order of sale was issued ?

" To this question the plaintiff objected, and the court sustained the objection, and refused to allow the witness to answer the question, to which ruling and action of the court the defendant at the time excepted.

" Question by defendant. 2. Tell the court and jury whether anything was due you on the said judgment from Michael Splahn at the time the decree was issued, and if so how much.

" To this question the plaintiff objected, and the court sustained the objection and refused to allow the witness to answer the question, to which ruling and action of the court the defendant at the time excepted, because it was a question of law, but permitted the defendant to prove, if he could, that said decree had all been paid, or any part of it.

"The defendant then offered to prove by the witness, that, although the decree was for one thousand four hundred and four dollars and sixty-six cents, he, at the time it was rendered, only owed Timothy Splahn the sum of seventy-six dollars, and that since the rendition of the decree, and before the sale of the land, he had paid Timothy Splahn seventy-six dollars, and that that amount was all he paid or owed to said Timothy on the decree, and that Timothy Splahn never claimed any more was due to him, but the court refused to allow defendant to make or give such proof, to which ruling and action of the court the defendant at the time excepted."

It was admitted by all the parties, before the plaintiff closed his evidence in chief, that at the time of issuing the decree and order of sale, in the cause of *Splahn* v. *Splahn,* before mentioned, the record did not show any satisfaction of the judgment therein rendered.

As we understand the bill of exceptions, the substance of the offer made was to prove that the defendant never really owed the judgment creditor as much as the decree was rendered for, but that he only owed him seventy-six dollars, which amount was paid after the decree was rendered, and before the sale was made. This is shown by the form of the questions asked, by the admission made on the trial, and by the offer of the court to permit the defendant to prove that he had paid the judgment in whole or in part.

It is well settled, that a sale on execution to a *bona fide* purchaser, when the judgment has been fully satisfied previously to the issuing of the writ, and when the purchaser buys ignorant of such satisfaction, and nothing appears of record as notice thereof, is void, and confers no title on the purchaser. *Laval* v. *Rowley,* 17 Ind. 36 ; *The State, ex rel. Wilber,* v. *Salyers,* 19 Ind. 432 ; *Myers* v. *Cochran,* 29 Ind. 256 ; *King* v. *Goodwin,* 16 Mass. 63 ; *Swan* v. *Saddlemire,* 8 Wend. 676 ; *Sherman* v. *Boyce,* 15 Johns. 443 ; *Jackson* v. *Anderson,* 4 Wend. 474 ; *Lewis* v. *Palmer,* 6 Wend. 367 ; *McGuinty* v. *Herrick,* 5 Wend. 240 ; *Neilson* v. *Neilson,* 5 Barb. 565 ; *Mouchat* v. *Brown,* 3 Rich. 117 ; *Wood* v. *Colvin,* 2 Hill N. Y. 566 ; *Hammatt* v.

*Wyman,* 9 Mass. 138; *Jackson* v. *Cadwell,* 1 Cow. 622; Rorer Jud. Sales, 252; Daugherty Sheriffs, 150.

The case of *Warner* v. *Blakeman,* 36 Barb. 501, holds, that the payment of the judgment before a sale will not affect the title of a *bona fide* purchaser. The cases of *Cameron* v. *Irwin,* 5 Hill N. Y. 272, and *Wood* v. *Colvin, supra,* are commented upon and disapproved of, but the weight and number of authorities seem to hold such sales void.

But, as we have seen, the offer was not to prove that the judgment had been paid before the sale. By a very liberal construction, we might make out that it was proposed to prove that there had been a small payment upon the judgment before the issuance of the order of sale and the sale thereunder; but this would not have affected the rights of a *bona fide* purchaser, as the doctrine above stated only applies where there has been an entire payment and satisfaction of the judgment.

The question remains to be considered, whether it was competent for the appellant, in this action, to prove that the mortgage was without consideration, except the sum of seventy-six dollars, and that the judgment was rendered for more than was actually due. It is well settled that such evidence is incompetent. The judgment conclusively settled the rights of the parties and those claiming under them, in all collateral proceedings. *Doe* v. *Harter,* 2 Ind. 252; *Carpenter* v. *Doe,* 2 Ind. 466; *Stockwell* v. *Walker,* 3 Ind. 384; *Davis* v. *Campbell,* 12 Ind. 192; *Spaulding* v. *Baldwin,* 31 Ind. 376; *Coleman* v. *Barnes,* 33 Ind. 93; *Abdil* v. *Abdil,* 33 Ind. 462.

We are of opinion that the decree could not be attacked in this collateral proceeding, and that the court committed no error in excluding the evidence offered.

It is also insisted that the court erred in giving and refusing to give instructions. The questions presented are the same which we have considered.

It is also claimed that the verdict was not sustained by the evidence. We think otherwise. The evidence shows a valid judgment, order of sale, a legal sale, a valid assignment of the certificate of purchase, and a deed to a *bona fide* purchaser of

the certificate. There was no evidence on the part of the appellant, and having held that the evidence offered was properly excluded, it necessarily results that the judgment must be affirmed.

The judgment is affirmed, with costs.