## Case No. 12,659.

### SEMPLE v. BANK OF BRITISH COLUMBIA.

[5 Sawy. 88; 6 Reporter, 9.] [1]

Circuit Court, D. Oregon. March 25, 1878.

FOREIGN CORPORATION — REPEAL OF STATUTE — CONSTRUCTION OF STATUTE — RES JUDICATA — PURCHASE AT SALE ON DECREE—MORTGAGOR — MORTGAGEE.

1. A foreign corporation is not authorized to transact business in Oregon without first appointing a resident agent, upon whom process may be served in actions against it, and all acts done by it without such appointment are void. In re Comstock [Case No. 3,078] affirmed.

[Cited in Northwestern Ins. Co. v. Elliott, 5 Fed. 227; Orange Nat. Bank v. Traver, 7 Fed. 147; Oregonian Ry. Co. v. Oregon Ry. & Nav. Co., 23 Fed. 237.]

[Cited in Dudley v. Collier (Ala.) 6 South. 306. Cited in brief in Dearborn Foundry Co. v. Augustine (Wash.) 31 Pac. 328.]

2. An amendment to sections 2 and 3 of the Oregon foreign corporation act, relieving a foreign banking corporation from making a deposit before doing business in the state, does not repeal or affect sections 8 and 9 of said act, requiring such corporation to appoint a resident agent before doing business here.

3. A provision in one section of an act, that a foreign corporation shall, before doing business in Oregon, appoint a resident agent herein, is not limited in its operation to certain corporations enumerated in a prior section of the same act, requiring such specified corporations to also make a deposit before doing business in the state.

4. In a suit to enforce the lien of a mortgage in the state circuit court the decree of said court directing the sale of the mortgaged premises, for the purpose thereof, necessarily determined the capacity of the plaintiff to maintain such suit and the validity of the note and mortgage sued upon, and the same thereby became, as to the parties thereto and their privies, res judicata.

[Cited in Alexander v. Knox, Case No. 170.]

5. Such decree, when made in favor of a foreign corporation prohibited from doing business in this state, does not authorize or empower such corporation to purchase said mortgaged premises at the sale thereof or to receive a conveyance thereof from the sheriff.

6. In a suit to enforce the lien of a mortgage the title to the mortgaged premises remains in the mortgagor until a conveyance is made by the officer authorized to make the sale; and a conveyance to the defendant, it being a foreign corporation not authorized to do business in Oregon, is void. and the title remains in the mortgagor.

7. A mortgage in Oregon is only a security, and the mortgagee is not entitled to the possession of the premises without the consent of the mortgagor, until the latter is divested of his title by a valid judicial sale and conveyance.

Action to recover possession of real property.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 6 Reporter, 9, contains only a partial report.]

W. Lair Hill, H. Y. Thompson, George W. Durham, and H. T. Bingham. for plaintiff.

William A. Effinger, for defendant.

DEADY, District Judge. Ruth A. Semple, a married woman and citizen of Oregon, brings this action against the defendant, a British corporation, doing business in this state, to recover the possession of the west half of lot No. 3, in Park block No. 1, in the city of Portland; alleging that she is the owner of the same as her separate property, and entitled to the possession thereof, which the defendant wrongfully withholds from her. The cause was tried without a jury. From the pleadings and evidence the material facts appear to be as follows. At and prior to June 27, 1873, the plaintiff was a married woman and the owner in fee, as her separate property, of lots 2 and 3, in Park block 1, of the city of Portland, at which date she, together with her husband, Eugene Semple, mortgaged said lots to the defendant to secure the note of her husband, then given to the defendant for the sum of nine thousand five hundred dollars, payable on January 1, 1874, with interest at the rate of one per centum per month; that on June 17. 1874, the circuit court of the state for the county of Multnomah. in a suit then pending therein between said Bank of British Columbia as plaintiff and said Ruth A. Semple and her husband as defendants, pronounced a decree, whereby it was adjudged that said bank recover of said Eugene Semple the sum of ten thousand two hundred and twenty-eight dollars, the balance then due upon said note, and that said lots be sold as upon execution, to pay said sum with accruing interest, together with the costs of said suit; that on July 18, 1874, the sheriff of said county, upon process issued out of said circuit court for the enforcement of said decree, sold said lots "to Edwin Russell, manager of the Bank of British Columbia." for the sum of ten thousand seven hundred and fifty-three dollars and seventy-five cents; that on August 3, 1874, said circuit court, upon motion of the attorney for said bank, subscribed "Attorney for Plaintiff and Edwin Russell," made an order confirming said sale, reciting therein that said lots had been sold as aforesaid "to Edwin Russell, manager of the Bank of British Columbia;" that on May 20, 1875, the sheriff of said county, but not the one who made the sale aforesaid, executed a conveyance in due form of law of said lots, to said bank: that said Edwin Russell at and from the date of such sale to the execution of said conveyance was the manager of said bank. and as such and on account thereof bid in said lots at said sale. and such manager directed the conveyance thereof aforesaid. to be made to said bank; that at and from the date of the execution of the mortgage aforesaid to the date of the conveyance aforesaid the defendant was a foreign corporation formed under the laws of Great Britain and had not complied with the laws of Oregon (Laws Or. 1874, p. 617) requiring such corporation to appoint a resident of the state its attorney with authority to accept service of all process necessary to give the courts of said state and the United States therein jurisdiction of said corporation, and upon whom such process might be duly served, and, therefore, was not authorized or empowered during such period to transact any business within said state.

Upon this state of facts the plaintiff contends that the note and mortgage, being made while the defendant was prohibited from doing business in this state, are illegal and void. Such was the ruling of the district court for this district in Re Comstock [Case No. 3,078]. Since that decision the question has been before the supreme court of the state, where it was held that a mortgage taken by this defendant under like circumstances was void as against a junior mortgage made to a third person; but the mortgagor not making any defense to the suit for foreclosure by the bank it was not determined whether he was estopped to set up the illegality of this transaction as against it or not. Bank of British Columbia v. Page, 6 Or. 431.

The ruling in Re Comstock [supra] has been characterized by the learned counsel for the defendant as harsh and "to the great damage and injury of the large foreign capital represented in our state by the various foreign corporations doing business therein." Whether there are any other foreign corporations than the defendant that have undertaken to transact business in this state in disregard of its legislation upon this subject does not appear, and the court is not advised. But if there are, it furnishes no reason why this plain and wholesome statute should be refined and construed out of existence, but rather the contrary. Nor does it appear wherein consists the harshness of the ruling in question. The effect thereof may be inconvenient and even injurious to the bank, but that alone is no reason why the court should have decided otherwise and thus refused to give effect to the plain letter of the statute and the evident purpose of its enactment. A foreign corporation which engages in business in this state in deliberate defiance of the law prescribing the conditions upon which alone it may come here, must take the consequences of such illegal conduct. and has no right to complain either of the harshness of the law or its enforcement. If this were a case in which the foreign corporation had attempted in good faith to comply with the law, but through some excusable mistake or inadvertence had failed to do so, there might be some ground for sympathy and some reason for asking a court so to construe the law, if possible, as to excuse the omission.

But it is now seriously contended "that any person dealing with an acting corporation, as such, cannot allege against it, in its suit or action, any such defense as an objection going to the regularity or perfectness of its being," citing the case of Chubb v. Upton, 95 U. S. 665, wherein the court say that "it is settled

by the decisions of the courts of the United States, and by the decisions of many of the state courts, that one who contracts with an acting corporation cannot defend himself against a claim on such contract, in a suit by the corporation, by alleging the irregularity of its origin." The actual ruling in the case was that where there was an attempted alteration of an Illinois corporation under the form of law, and the defendant took part in the proceedings, subscribed for the increased stock, paid a percentage thereon and acted as an officer of the new company, he could not, in an action by the assignee in bankruptcy of such company to compel the fulfillment of his contract of subscription, deny the regularity of the organization of the new company. In support of this conclusion the court cited the similar cases of Upton v. Tribilcock, Sanger v. Upton, and Carver v. Upton, 91 U. S. 45, 56, and 64.

But surely these cases are not in point, and the doctrine of them has no application to the case under consideration. This is a case of an illegal act done by the defendant, not only without authority of law, but in direct violation of a positive legislative prohibition. The case of Chubb v. Upton was that of a duly organized domestic corporation that had attempted in good faith to increase its stock according to the forms of law, and in so doing had innocently omitted some intermediate step, or deviated from some non-essential direction, which the court characterized as a mere irregularity—while the party who made the objection was a stockholder and director in the company during the very time of the transactions complained of. Here the party alleging the illegality of the contract is a stranger to the defendant, and in no way responsible for the legality of or a participant in the illegality of its contract. The defendant, as to this state, or any transaction therein, is neither a corporation de jure nor de facto. It has never acquired the right to exist here, or even attempted it. Whatever it may be in the place of its creation, here, at least, it is a mere nullity, a nonentity. The question of mere irregularities in its organization does not arise. For there is not the slightest ground for claiming that it has ever, regularly or otherwise, become clothed with the form or power of a corporation in this state or attempted to do so. Indeed, it was expressly prohibited from existing or exercising its corporate functions in Oregon, except upon the condition precedent, that it shall first comply with the law of the state in the appointment of a resident agent. As well say that any fortuitous assemblage or association of persons not having in any way attempted or intended to become a corporation under the laws of this state, might nevertheless, by simply calling themselves such and acting as such, become one de facto. As was said in In re Comstock, supra: "The doctrine of estoppel in pais has never been carried so far as to prevent a party from showing that a corporation, even if it be one de jure, had not the power to do a particular thing, or that it was done in violation of a statute." No one is estopped to show that an act upon which a party claims a right is illegal simply because he was a party to it—even in pari delicto. If the matter concerned the parties to the transaction alone the rule might be otherwise, but the interest of society in whose behalf the act is prohibited is paramount to private equities. As was said in Steadman v. Duhamel, 1 C. B. 888: "There cannot be an estoppel to show a violation of a statute, even to the prejudice of an innocent party;" and in Keen v. Coleman, 39 Pa. St. 299: "Legal incapacity cannot be removed by fraudulent representation, nor can there be an estoppel involved in the act to which the incapacity relates, that can take away that incapacity."

It is also contended by counsel for defendant that as the foreign corporation act of October 21, 1864, was so amended on December 19, 1865, as to omit therefrom foreign banking and exchange corporations so far as the same required such corporations to make a deposit in Oregon and pay a tax on the same, therefore the defendant ought not to be held to be within the purview of sections 8 and 9 of such act (Laws Or., supra) requiring a foreign corporation to appoint a resident agent before transacting business here. But the deduction sought to be made from this fact seems to be the very reverse of the most reasonable. The argument as I comprehend it, is this—because the legislature were induced to relieve the defendant as a foreign banking corporation from the duty of making a deposit here for the security of its local creditors and from paying a tax on the same, that therefore they intended and by implication did, relieve it from the duty of appointing a resident agent here upon whom process could be served and thereby compel the citizens of Oregon who might have causes of action, or suit against such corporation, to follow it into the courts of Great Britain for redress. The mere statement of the argument seems a sufficient refutation of it. The two subjects of agents and deposits are separate and distinct. Although in the same act, they have no other relation with or any dependence upon each other. The provisions concerning the one may be stricken out of the act without affecting the other. Indeed, as was shown in Oregon & W. Trust Inv. Co. v. Rathbun [Case No. 10,555], these matters were introduced into the assembly in two separate acts, which in the course of their passage through that body were stuck together and passed as one. Independently of the well established rule, that repeals by implication are not favored by the law (Smith, Com. Law, § 758), it would be a clear case of judicial legislation to assume that because the legislature specifically repealed an act requiring the defendant to make a deposit before doing

business in this state and was silent as to the act requiring it to appoint a resident agent here, that therefore it repealed the latter one also.

It is also claimed that said sections 8 and 9 of the foreign corporation act, which declare and provide that "A foreign corporation before transacting business in this state must duly" appoint a resident agent here, are a mere general expression following sections 2 and 3 thereof requiring the deposit to be made, and are therefore only applicable to such corporations as are therein specially enumerated upon the familiar rule in the construction of penal statutes, cited in U. S. v. Irwin [Case No. 15,445], "Where general words follow an enumeration of particular cases, such general words are held to apply only to cases of the same kind as those which are expressly mentioned;" and that since banking and exchange corporations were, by the amendment of December 19, 1865, stricken out of said sections 2 and 3, said sections 8 and 9 are not applicable to the defendant. The case of U. S. v. Irwin [supra], was this: The act of 1825 made it a crime to forge any "indent, certificate of public stock, treasury note, or other public security of the United States." Upon motion to quash an indictment for forging a land warrant the court held that such instrument was not one of those enumerated in said act, and that the general phrase "public security" ought not to be construed to include it, because the sense of such phrase, if otherwise broad enough to cover the warrant, was limited in its operation to the kind of instruments which immediately preceded it, and that these all referred to evidence of "pecuniary indebtment;" to which class or kind the warrant, being a mere certificate that the holder thereof was entitled to locate one hundred and sixty acres of the public land, did not belong. But certainly this rule has no application to the case under consideration. The title of the act declares that its purpose is to regulate and tax certain foreign corporations doing business in this state, of which the defendant is one. The regulation consists in requiring the appointment of a resident agent, as provided in sections 8 and 9. That is one matter, and the taxing of such corporations, as provided in sections 2 and 3, is another. They are separately and distinctly provided for, and are in no sense parts of the same expression, provision or enumeration in which the operation of the more general words is to be restrained within the significance and applicability of the particular ones. Neither is the act under consideration within the rule invoked—not being a penal one. Smith, Com. Law, § 740. The first part of the act provides for raising public revenue and providing a security for any claims of the people of the state against certain foreign corporations, while the latter part prescribes the conditions, upon the performance of which

foreign corporations may in any case transact business in the state. The defendant is included in the title of the act, which has never been changed, as well as sections 8 and 9 thereof, and therefore the latter cannot be restrained in their operation so as not to include the defendant, as in the case of Oregon & W. Trust Inv. Co. v. Rathbun, supra, which was held by this court not to be within the purview of the act, because not included in the title thereof.

It is admitted, as claimed by counsel for the defendant, that while the title may restrain the operation of an act, it cannot enlarge it. But there is no attempt here to enlarge the act by means of the title. On the contrary, the act in sections 8 and 9 is really broader than the title, but the defendant being specially mentioned in the title and plainly comprehended in the language of said sections—"a foreign corporation"—so far as it is concerned, the title and act exactly coincide. But passing this point, it is insisted by the defendant that the decree in the foreclosure suit established its right to maintain the same and the validity of the debt and security sued on. This is questioned by the plaintiff, but I think without sufficient reason. The Oregon Code (section 726) gives the rule for ascertaining what was determined by a judgment or decree, as follows: "That only is deemed to have been determined by a former judgment, decree or order, which appears upon its face to have been so determined, or which was actually and necessarily included therein, or necessary thereto." It may be admitted that it does not appear upon the face of the decree in the foreclosure suit that the validity of the note and mortgage was called in question and determined upon the point now raised, namely, that the defendant was a foreign corporation doing business in the state in violation of its laws. There was a demurrer to this complaint upon the ground that the defendant had not capacity to sue because it was not a corporation formed under the laws of Oregon. This demurrer was overruled by consent and an answer filed alleging usury in the contract. But the court, even if there had been no defense interposed, must, in giving its decree, have determined that the bank had capacity to sue and that the note and mortgage were valid. This much at least was necessarily included in the decree, and without determining these two questions in this way the court could not have pronounced it. It is not necessary to say that the circuit court as a matter of fact actually and consciously passed upon these questions in the light and upon the grounds on which they are now presented to this court. On the contrary it may be admitted that it did not, because the point—that in taking this note and mortgage the bank was a foreign corporation not authorized to transact business in this state—was not presented to it. But in contemplation of law the court, in determining these questions in favor of the plaintiff therein, did

so as to any and all matters which the defendant might have alleged in objection thereto. In Cromwell v. County of Sac, 94 U. S. 352, Mr. Justice Field, in discussing this subject, says: "A judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is conclusive, so far as future proceedings at law are concerned, as though the defenses never existed." This decree is the determination of a court of general and concurrent jurisdiction and cannot be questioned collaterally. Between these parties and upon these points the decree is conclusive in every other court. The matter is res judicata. 1 Greenl. Ev. § 528.

Admitting this conclusion, however, the plaintiff claims that the defendant could not purchase the premises at the sheriff's sale or receive the title thereto by his conveyance, and therefore the title is still in the plaintiff and, of course, she may maintain this action. In answer to this proposition counsel for the defendant insists that upon the testimony the sale was made to Russell, who had capacity to purchase, and not the bank, and that the subsequent conveyance to the latter by the assignment or direction of the former are res inter alios acta, which do not concern the plaintiff and about which she cannot inquire. The court has found that sale was made to the bank and not Russell. Upon the evidence, and in the nature of things it is plain that "Edwin Russell, manager of the Bank of British Columbia," in bidding upon property sold upon a decree in favor of his principal, the exact amount due his principal and to which the sheriff's deed was made by his verbal direction to the bank's attorney, was simply acting as the agent of the bank. Upon their face, the words "manager," etc., appended to the name of Russell, are not to be taken as a mere descriptio personæ, but rather as a declaration that he was acting—managing—for the bank and not himself; and there is nothing in the evidence or the circumstances of the case that indicates the contrary. But it is immaterial what the fact is in this respect. In either case the question recurs: Did the bank take title by the conveyance? Because, if it did not, the title is still in the plaintiff. The cases cited by the counsel for the defendant (Bailey v. Le Roy, 2 Edw. Ch. 515; Frizzle v. Veach, 1 Dana, 211; Ehleringer v. Moriarty, 10 Iowa, 78; McClure v. Englehart, 17 Ill. 47; Voorhies v. U. S. Bank, 10 Pet. [35 U. S.] 449) to show that upon a judicial sale, when the conveyance is made to a third person by the direction of the purchaser, the judgment-debtor or mortgagor cannot question the sufficiency of

such direction or the right of such third person to have such conveyance, are not in point. The law of these cases is undoubtedly sound. But the fact is implied, if not expressed, in all of them, that there was a valid sale, and that the person to whom the conveyance was ultimately made was capable of taking the title thereby. This being premised, the only question decided in any of these cases was, that the sufficiency of the assignment, in pursuance of which the officer made the conveyance to a third person rather than the purchaser, was a question solely between such person and purchaser. In none of them does it appear that the grantee in the conveyance was incapable of accepting it or taking anything by it. Admitting then that the sale was made to Russell and not to the bank, the question arises here, not whether Russell duly assigned his right to the bank, so as to entitle it to the conveyance, but whether the bank could take the conveyance either as a bidder or the assignee of Russell.

It is assumed in this argument by the defendant that the mere sale by the sheriff upon the decree of the circuit court divested the plaintiff of her title to the premises. But upon a careful examination of the matter I am satisfied, both upon reason and authority, that the law is otherwise. In Freeman on Executions (section 324) it is said that, "In order to divest the legal title held by the defendant in execution a conveyance must, in most of the states, be made by the proper officer, in pursuance of a prior levy and sale." The purchaser, "though he is entitled on demand to receive a conveyance, cannot be treated as the owner of the property till it has vested in him by a deed executed by the proper authority." See, also, Id. § 333. To the same effect is Ror. Jud. Sales, § 357; Bouv. verba "Sale," 19. By the Oregon Civil Code (sections 296, 301, 304), it is provided that a sale of real property upon execution—except leaseholds of less than two years, is conditional—subject to redemption within sixty days from the confirmation of sale. But if no redemption is made within the time prescribed, the purchaser is entitled to a conveyance and also the possession of the premises in the meantime. A sale of real property, whether judicial or voluntary, does not pass title but only gives a right to a conveyance of the same according to the terms thereof. A sale by a sheriff is within the statute of frauds, and no title passes except upon the execution of a deed by him. 4 Kent, Comm. 434. In some of the New England states no conveyance is necessary upon a forced sale, as the sheriff's return, in analogy to his return upon an elegit in England, constitutes the title of the purchaser. But wherever, as in this state, a conveyance is required, or rather wherever it is not expressly otherwise provided, no title vests in the purchaser at a judicial sale until the officer making the same executes a conveyance to him. In

Schemerhorn v. Merrill, 1 Barb. 517; Smith v. Colvin, 17 Barb. 157; McMillan v. Richards, 9 Cal. 412; People v. Mayhew, 26 Cal. 656; Page v. Rogers, 31 Cal. 300,—it was held under statutes substantially the same as that of Oregon, that a sale by a sheriff did not vest the title to the premises in the purchaser, but the execution and delivery of his deed therefor. This being so, the title to the premises at the date of the execution of the sheriff's deed to the defendant was, notwithstanding the sale, in the plaintiff, and the defendant being then forbidden to transact any business in this state, and therefore incapable of accepting said conveyance or receiving any right under it, the same, so far as it is concerned, was and is void and of no effect, and the title remains and is in the plaintiff. And this is so, even upon the assumption that the sale was made to Russell; but the fact being that it was made to the defendant, the conveyance is also void for want of a valid sale. A sale is a contract to which there must be two parties capable in law of contracting. But the defendant was incapable of either buying or selling in Oregon, and a purchase by it or in its name was of no more effect here than if it was actually then nonexistent. Neither did the confirmation of this supposed sale operate to validate the contract or to enable the defendant to take anything under it. True, the Code declares that "the order of confirmation is a conclusive determination of the regularity of the proceeding concerning such sale." Civ. Code Or. § 293. But certainly a determination that the proceedings of the sheriff in conducting the sale in obedience to the process are regular does not include the question of the bidder's capacity to purchase and receive the title. The purchaser may be an infant, a married woman, or an alien enemy, but if he pays the price bid, and the proceedings by the sheriff are according to law, the sale will be confirmed. The question of the capacity of the purchaser to contract or receive the title is not before the court upon a motion to confirm a sale, at least unless specially made, which is not claimed to have been done here. This a matter which could concern no party to the proceeding but himself, and therefore, in this respect, he buys at his peril. Neither did the decree of sale give the defendant any right in or to the premises, but only the right to have the same sold according to law to satisfy its demand. McMillan v. Richards, 9 Cal. 411.

But it is further maintained by counsel for the defendant that the question of the validity of the mortgage having been determined by the decree of sale, and the mortgagee, the defendant, being in possession of the mortgaged premises, the mortgagor, the plaintiff, cannot maintain an action to recover possession, citing Brobst v. Brock, 10 Wall. [77 U. S.] 519. This case went to the supreme court from Pennsylvania, and so

far as the right of a mortgagee in possession is concerned, was decided upon the rule of the common law which upon this point still prevails in that state. The court states it to be that as between the parties to a mortgage "it is a grant which operates to transmit the legal title to the mortgagee, and leaves the mortgagor only a right to redeem." After breach of the condition, the mortgagee may enter or maintain an action for the possession, and having entered, he cannot be dispossessed by the mortgagor while the mortgage is in force. It is not necessary to stop here and inquire whether the defendant, being incapable of holding or possessing any property in this state under any circumstances, could avail itself of this defense, even if the common law were in force in this state upon this point. But what is called the equitable doctrine in regard to the rights of parties to a mortgage, is now the law of this state. In Anderson v. Baxter, 4 Or. 110, and Roberts v. Sutherlin, Id. 222, the supreme court of the state held that a mortgage was a mere security, that therefore the mortgagee is the owner of the premises, and entitled to the possession thereof until a sale under a decree to enforce the lien of the mortgagor; and this rule was followed by this court in Witherell v. Wiberg [Case No. 17,917], wherein it was held that prior to such sale the mortgagor could not, under any circumstances, hold the possession of the mortgaged premises for the satisfaction of his debt without the consent of the mortgagee. It also appears that the conveyance to the defendant was executed by a sheriff, other than the one who made the sale. This appears to be in direct violation of both the general rule and the statute of the state upon the subject, which latter provides that a sheriff going out of office shall nevertheless "complete the execution of all final process which he has begun to execute." Civ. Code Or. § 986. See, also, Freem. Ex'ns, § 327. And therefore it must be void for this reason. But as this point was not made by counsel the decision of the case will not be rested upon it.

The plaintiff is entitled to recover, and there must be a finding of fact and law in accordance with this opinion.

[For an action for use and occupation, see Case No. 12,660.]