BLACK v. CALDWELL, Sheriff, et al.

(Circuit Court, D. Montana. November 1, 1897.)

1. FOREIGN CORPORATIONS — AUTHORITY TO DO BUSINESS — FILING PAPERS IN EACH COUNTY.
    Comp. St. Mont. div. 5, c. 24, requiring foreign corporations, before transacting any business in the state, to file a duly-authenticated copy of certain documents in the office of the secretary of state, "and in the office of the recorder of the county where they intend to carry on or transact business," does not require a foreign corporation to file such copy in every county where it transacts business, but only in the county where it has its principal office.

2. FORECLOSURE OF MORTGAGE—MATTERS ADJUDICATED.
    A decree, by a court having jurisdiction, foreclosing a mortgage, in an action by an assignee thereof, is a 'finality as to the validity of the mortgage and the assignment, concluding parties and all in privity with them.

3. FOREIGN CORPORATION—RIGHT TO PURCHASE AT FORECLOSURE SALE—EQUAL PROTECTION OF LAWS.
    Where a foreign corporation which has not complied with the law, so as to be authorized to do business in the state, holds a mortgage which it has a right to foreclose within the state, a denial of its right to become a purchaser at the foreclosure sale is a denial of the equal protection of the law in violation of the fourteenth amendment.

Luce & Luce, for plaintiff.
I. Parker Veazey, for defendants.

KNOWLES, District Judge.    In the bill in this cause it is alleged that the Northwestern Guarantee Loan Company is a foreign corporation, organized under the laws of Minnesota; that on the 25th day of March, 1890, said company entered into a contract with Horace T. Kelly and Martha I. Kelly, his wife, whereby the two last-named persons made and executed a mortgage to said company upon certain lands in Gallatin county, Mont., to secure the sum of $3,550, with interest at the rate of 10 per cent. per annum; and that this contract was entered into in said Gallatin county. It is also set forth in the bill that previous to the time of entering into said con-

tract, and at no time subsequent thereto, had the said company complied with the provisions of chapter 24, div. 5, of the Compiled Statutes of Montana, in that it had made none of the records required by said chapter in Gallatin county. The provisions of said chapter which apply to the points presented in this case are as follows:

"All foreign incorporations or joint-stock companies organized under the laws of any state or territory of the United States or by virtue of any special act or acts of the legislative assembly of any such state or territory, or of any foreign government, shall before doing any business of any kind, nature or description whatever within this territory, file in the office of the secretary of the territory, and in the office of the county recorder of the county wherein they intend to carry on or transact business, a duly authenticated copy of their charter or certificate of incorporation, and also a statement, to be verified by the oath of the president and secretary of such incorporation and attested by a majority of its board of directors, showing: First. The name of such incorporation and the location of its principal office or place of business within this territory, and if it is to have any place of business or principal office within this territory, the location thereof. Second. The amount of its capital stock. Third. The amount of its capital stock actually paid in money. Fourth. The amount of its capital stock paid in any other way, and in what. Fifth. The amount of the assets of the incorporation, and of what the assets consist, with the actual cash value thereof. Sixth. The liabilities of such incorporation, and if any of its indebtedness is secured, how secured, and upon what property. Such incorporation or joint-stock company shall also file at the same time and in the same office, a certificate under the seal of the corporation and the signature of its president, vice-president or other acting head, and its secretary, if there be one, certifying that the said corporation has consented to be sued in the courts of this territory upon all causes of action arising against it in this territory, and that service of process may be made upon some person, a citizen of this territory whose name and place of residence shall be designated in such certificate and that process when so served upon such agent, shall be taken, deemed and held to be as valid to all intents and purposes as if served upon the company in the state or territory under the laws of which it is organized."

"Sec. 443. Written consent of the person so designated to act as such agent, shall also be filed in like manner, and such designation shall remain in force until the filing in the same office of a written revocation thereof, or of the consent executed in like manner."

The word "territory," so far as the same applied to Montana, was changed by the constitution of the state to the word "state."

Section 444 of this chapter provides that any contract entered into by any corporation who has failed to comply with the provisions of the above statute shall be void and invalid as to such corporation.

The claim is that none of the requirements of this statute were complied with in Gallatin county. In the argument of the case it was conceded that said corporation had complied within Lewis and Clarke county, Mont., with said statute. Subsequently the attorneys for the respective parties to this action filed a stipulation which makes the following statement of facts a part of the bill herein:

"Prior to the making of the loan to Horace T. Kelly and wife, or the acceptance of the said Kelly note or mortgage referred to in the plaintiff's complaint, and before doing business of any kind in the territory or state of Montana, the Northwestern Guarantee Loan Company filed in the office of the secretary of state and of the county clerk and recorder of Lewis and Clarke county all of the papers provided for and required to be filed by foreign corporations, under chapter 24 of the Compiled Statutes of Montana; and in the verified statement so filed by said company the principal place of business or principal office of the

company within the territory of Montana is declared to be located at the city of Helena, in the said county of Lewis and Clarke, but the said company has never at any time filed in the office of the county recorder of the county of Gallatin any of the papers specified in said chapter 24 of the Compiled Statutes of Montana, nor has the Industrial Trust Company (one of the defendants in this cause) ever at any time filed any of the papers provided in the said chapter 24, either in the office of the secretary of state of Montana, or in any office of the county clerk and recorder of any county in the territory or state of Montana."

The bill further sets forth that on the 1st day of April, 1892, the said Northwestern Guarantee Loan Company sold and assigned said mortgage, executed as aforesaid to it, to the defendant the Industrial Trust Company; and that said Industrial Trust Company, prior to the 1st day of April, had not complied with the aforesaid provisions of the aforesaid chapter 24; and that prior to said date said trust company was doing business in Montana, and at the said date, and since the same, was so engaged, and is attempting to enforce and collect divers and numerous notes, mortgages, and contracts made to and with said Northwestern Guarantee Loan Company in its business of loaning money. It is then set forth that said Industrial Trust Company commenced suit against the said Kelly and wife, Catherine Callum, and William B. Thompson to foreclose said mortgage, and on the 6th day of July, 1895, obtained a decree of foreclosure of the same for the sum of $4,801.50; that afterwards White Caldwell, under an order of said sale, issued from the court in which said decree was rendered, sold, as sheriff of Gallatin county, said real estate in said mortgage mentioned, to the said Industrial Trust Company, and issued to said company a certificate of sale of said land; that, by virtue of this certificate of sale, said trust company claims some rights or interest in said land. It is further set forth that the court had no jurisdiction to order the aforesaid sale, and that the contract of purchase by said trust company is void. The plaintiff alleges that he is the owner in fee of this land, and prays that he may have a decree declaring the same, and that the said mortgage be declared canceled, and the Industrial Trust Company be enjoined from claiming any right, title, or interest in the said lands, and that the sheriff, Caldwell, be enjoined from making a deed to said trust company for said land. The defendants demurred to said bill, on the ground that it does not state facts sufficient to constitute a cause of action; in other words, that the same does not state any grounds for the equitable relief prayed for.

The legal questions presented in this case are as follows: (1) Was the Northwestern Guarantee Loan Company required, under the statute law of Montana, to file the statement required of foreign corporations by said chapter 24 in Gallatin county, although it had filed such statement in Lewis and Clarke county? (2) What was the effect of the decree of foreclosure entered against Kelly and wife and others as to the validity of the mortgage made to the Northwestern Guarantee Loan Company, and as to the validity of the assignment of the said mortgage to the said Industrial Trust Company? (3) Was the Industrial Trust Company, on account of having failed to file any of the statements required by said chapter 24,

precluded from having said land specified in the mortgage sold, and from bidding in the same at said foreclosure sale?

In looking at the 442d section of chapter 24, Comp. Laws Mont., it will be observed that foreign corporations are to make the statement and record required thereby "in the office of the secretary of the territory, and in the office of the county recorder of the county wherein they intend to carry on or transact business," and the statement shall state the "principal office or place of business." There is no requirement that the record shall be made in every county wherein the said corporation may transact any business.

In the case of Cowell v. Springs Co., 100 U. S. 55, the supreme court said:

"If the policy of the state or territory does not permit the business of the foreign corporation in its limits, or allow the corporation to acquire or hold real property, it must be expressed in some affirmative way."

In the case of Union v. Yount, 101 U. S. 352, the supreme court, after quoting the language above, said:

"In harmony with the general law of comity attaining among the states comprising the Union, the presumption should be indulged that a corporation of one state, not forbidden by the law of its being, may exercise within another state the general powers conferred by its own charter, unless it is prohibited from so doing either in the direct enactments of the latter state or by its public policy, to be deduced from the general course of legislation or from the settled adjudications of its highest courts."

In Mor. Priv. Corp. § 961, this rule is expressed:

"Accordingly, it may be stated as a general rule of the common law, in force in each of the states of the Union, that a corporation formed under the laws of another sovereignty may carry on its business and make contracts within the state, and may protect its rights in the courts of the state either as plaintiff or as defendant."

Again, in section 966, the same author says:

"The law of comity is the law of the land, unless expressly or impliedly repealed."

From these authorities, I think, it may be predicated that the statute of Montana under consideration is in derogation of the common-law rule as to the comity which prevails as to corporations organized under the laws of one state doing business in another, and should be strictly construed. As it does not clearly state or imply that a foreign corporation should make the statement specified in said chapter 24 in each county of the state before doing business therein, it should not be so construed. If the statute is complied with in filing the necessary statement in the office of the secretary of state, and in the county where the corporation has its principal office or place of business, it will be sufficient. Only to this extent has the common-law rule been modified if this statute is construed strictly. If, however, I should be mistaken as to this rule, I am confronted with another fact. The defendant the Industrial Trust Company obtained a decree of foreclosure, in a court of competent jurisdiction, of the mortgage named in the bill.

In considering the effect of a judgment upon the merits of a cause, the supreme court, in Cromwell v. Sac Co., 94 U. S. 351, said:

"It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action and established by competent evidence, the subsequent allegation of their existence is of no legal consequence."

In the case at bar, the defense that the said mortgage was void, because the Northwestern Loan Company had not complied with the provisions of said chapter 24 of the Compiled Laws of Montana, could have been made. It could also have been set forth as a defense that the assignment of this mortgage to the Industrial Trust Company was void. This view is sustained in the case of Semple v. Bank, 5 Sawy. 88, Fed. Cas. No. 12,659. The mortgage, then, and the assignment, must be considered as valid contracts, and the decree foreclosing said mortgage must be classed as one within the jurisdiction of the court.

The contention that the sale to the Industrial Trust Company was void is the only point, then, left upon which the plaintiff can support his claim. The mortgage must be considered valid, the assignment valid, and the foreclosure valid, but the claim is that, because the Industrial Trust Company failed to comply with the law, its purchase of the property at the sale ordered by the court is invalid. A foreign corporation, which owns a contract, has, as a matter of comity, a right to sue and collect the same in this state. There is no provision in the law prohibiting a foreign corporation from bringing a suit to enforce a claim against any resident of this state. In the case of American Loan & Trust Co. v. East & W. R. Co., 37 Fed. 242, it was held that in Alabama, under a statute similar to the one in this state, a foreign corporation could maintain a suit against another corporation in that state. In the case of Utley v. Mining Co., 4 Colo. 369, it was held that the failure of a foreign corporation to comply with the statute of the state of Colorado, similar to the Montana statute, did not affect its capacity to sue. This case was referred to approvingly in the case of Fritts v. Palmer, 132 U. S. 282, 290, 10 Sup. Ct. 93. The right to maintain a suit would certainly involve the right to have a judgment or decree entered therein. In the case of Richards v. Holmes, 18 How. 143, the supreme court held that a creditor at a sale of real property made by a trustee to satisfy his claim had a right to become a purchaser. This ruling was approved in the case of Smith v. Black, 115 U. S. 308, 6 Sup. Ct. 50. It is stated in Pom. Eq. Jur. 1190, that a mortgagee may become a purchaser at the sale of the mortgaged premises. If a sale made by a trustee in a mortgage to the mortgagee cannot be impeached, much less can a sale made by order of court be impeached, for the same reason. I think it may be safely affirmed that a mortgagee has the general right to become a purchaser at a judicial sale of the premises named in the mortgage, although no permission for him to make such purchase is given in the decree. I think it may be safely said that any person in Montana who is a mortgagee would have the right to become a purchaser at a sale made by

order of court with a view of liquidating his debt and satisfying his mortgage. The question is then presented as to whether the state can say that a foreign corporation shall not have this right.

In the case of Erie Ry. Co. v. State, 31 N. J. Law, 531, it was said:

"It seems to be utterly inconsistent with legal principles, which have always been decreed axiomatic, to hold that a government can recognize the legal existence of a foreign corporation for the purpose of taxation, and at the same time can deny such legal existence for the purpose of depriving it of those rights which belong to every individual or company known to law."

See, also, Mor. Priv. Corp. § 937.

The same may be said in regard to a rule that would allow a foreign corporation to bring a suit in the courts of a state, and yet would deny it the benefits to be derived from that suit. The right of a creditor to bid in property decreed to be sold in an action brought by him is a valuable one. In many cases it is the only means afforded a creditor of obtaining anything of value from his judgment or decree. That provision of the fourteenth amendment of the constitution of the United States which provides that "no state shall deny to any person within its jurisdiction the equal protection of the law" applies to corporations, whether domestic or foreign, the same as individuals. The only question is as to when is a corporation within the jurisdiction of the state. If such a corporation comes into the courts of a state rightfully to have its rights adjudicated, I apprehend for that purpose it is within the jurisdiction of the state.

In the case of Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, 8 Sup. Ct. 737, the supreme court said of foreign corporations:

"The equal protection of the law which these bodies may claim is only such as is accorded to similar associations within the jurisdiction of the state. The plaintiff is not a corporation within the jurisdiction of Pennsylvania. The office it hires is within the jurisdiction, and, on condition that it pays the required license tax, it can claim the same protection in the use of the office that any other corporation having a similar office may claim. It would then have the equal protection of the law so far as it had anything within the jurisdiction of the state, and the constitutional amendment requires nothing more."

If no license had been required of the foreign corporation mentioned in the above case, it would, by the rules of comity, have had the right to do business within the state of Pennsylvania, and, so far as it had any rights or property therein, it would have been entitled to the equal protection of the laws of that state. To the extent of its rights and property, it would have been within the jurisdiction of that state. In this case, as I have shown, the defendant corporation had the right to sue in the courts of Montana. Being for that purpose within the jurisdiction of the state, it should have the equal protection of the laws so far as the suit it had instituted to foreclose the mortgage mentioned in this case was concerned; and, as I believe, if the statute under consideration should be interpreted as forbidding the defendant company from purchasing said property named therein at the judicial sale ordered in said foreclosure suit, it would be a violation of said provisions of the fourteenth amendment to the United States constitution, as not affording to said company the equal protection of the laws of the state.

There is another point to be observed in considering the statute under consideration. There is nothing in the same that prohibits a foreign corporation from holding real estate. It is provided that the contracts of a foreign corporation which fails to comply with the statute shall be void and invalid as to such corporation; that is, the corporation cannot enforce any contracts it may make. As far as it is concerned, its contracts are void and invalid. But, as to any person duly qualified to enter into such a contract, it is not void or invalid, and can be enforced by him against the corporation. It would seem, then, that, until the person who entered into a contract with the foreign corporation saw fit to declare the same invalid and void, it must remain in force. The sale under a decree of foreclosure of a mortgage in Montana may not possess all of the characteristics of a judicial sale under the former equity practices, yet I think it must be classed as such a sale. See Pom. Eq. Jur. § 1228. A judicial sale is one made by the court, and one who bids in the property at such a sale becomes subject to the orders of the court. Rorer, Jud. Sales, §§ 1–4, 148. The court can enforce a sale so made. It is not proper, then, for a third party to step in and declare such a sale and purchase void. The court has control of this matter. The court only should have the right to declare such a sale void. A judicial sale is made for money unless otherwise ordered in the decree. I think it would be highly inequitable, after a party had paid his money to an officer or commissioner in pursuance of his bid at a judicial sale, to have some third party step in and say the contract of purchase is void. The defendant in a foreclosure suit is not a party to the contract of sale, if it can be called a contract, but the court is such a party. The purchaser from such a defendant stands in no better position than his grantor. The sale in the case at bar must remain in force unless the contract of sale is annulled by the court.

I am aware that the views here expressed are not fully in accord with those expressed by Judge Deady in the case of Semple v. Bank, 5 Sawy. 88, Fed. Cas. No. 12,659. I am not sure that the statutes of Oregon at the date of this decision were the same as those of Montana in regard to foreign corporations. The same considerations bearing upon this question that have presented themselves to this court were not presented to the learned Judge Deady in that case, and hence I do not feel that the decision in that case should control this court in this case. The demurrer is therefore sustained.